CHARLES SCHNEIDER ET AL., Plaintiffs and Appellees, v. TROPICAL GAS COMPANY, INC., Defendant and Appellant.

No. R-66-70.          Decided December 29, 1967.

*Baragaño, Trías, Saldaña, Harris & Francis, José Ángel Cestero,* and *Roberto Busó Aboy* for appellant. *Segurola & Romero* for appellees.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The decision of the present appeal turns on the interpretation of § 4 of Act No. 3 of March 13, 1942 (Sess. Laws, p. 284), 29 L.P.R.A. § 469, which reads: "The employer cannot, without just cause, discharge a pregnant woman. A decrease in the amount of work done because of the pregnancy shall not be considered as just cause."

For a better understanding of the question to be decided, it is necessary to bear in mind that at the time of the approval of the transcribed text the law in force consecrated

the right of the employees of lucrative businesses not to be discharged from office without just cause. Act No. 43 of April 28, 1930 (Sess. Laws, p. 356) provided to that effect that: "Every employee of an industry or other lucrative business whose services are *contracted for without a definite term*, and whose salary is agreed upon by the month, fortnight or week, who is discharged without just cause and without previous notice served at least fifteen days prior to his discharge, shall be entitled to receive from his principal or employer such salary as he may have earned and one month's, one fortnight's, or one week's additional salary as the case may be. . . ."[1] (Italics ours.) As to the shop clerks and commercial factors, § 220 of the Code of Commerce guaranteed the salary corresponding to one month.

As we indicated in *P.R. Cap and Tires Sales* v. *District Court*, 68 P.R.R. 370 (1948), the legislative intent is to protect the workman in his right to continue in his employment and not to be discharged arbitrarily, unjustifiably. The contents of the concept "just cause" have been object of consideration in various occasions. *Wolf* v. *Neckwear Corporation*, 80 P.R.R. 519 (1958); *Mercedes Bus Line, Inc.* v. *District Court*, 70 P.R.R. 656 (1949); *Blanes* v. *District Court*, 69 P.R.R. 106 (1948); *Avilés* v. *District Court*, 69 P.R.R. 1 (1948); *P.R. Cap and Tires Sales* v. *District Court*, *supra*. It does not seem that there existed any doubt at any time with respect to the fact that negligence and inefficiency in the discharge of duties constituted sufficient cause for dismissal. In *Blanes*, *supra*, at page 111 we mentioned that

---

[1] This Act was amended by Act No. 84 of May 12, 1943 (Sess. Laws, p. 196), which established the right to one month's salary in the cases of unjustified discharge.

Act No. 43 of 1930, as amended, as well as § 220 of the Code of Commerce, were substituted by Act No. 50 of April 20, 1949 (Sess. Laws, p. 126), 29 L.P.R.A. §§ 183–185, which in addition to providing for the right to one month salary it reversed the burden of proof to request that the employer allege in his answer to the complaint, the facts which caused the dismissal, and to prove that such dismissal was justified.

in every employment contract there exists either expressly or impliedly the condition that the employee shall comply with the duties of his work competently, and if it is shown that the employee is incompetent, inefficient or negligent in such a manner that to continue with his services would be to the prejudice of the employer or even of third persons, this fact constitutes just cause for the dismissal.[2]

Conscious of this reasonable interpretation—the grounds of inefficiency for the discharge of the employee—the Legislature wished to remove from its application—in the use of its unquestionable police power to promulgate laws for the protection of the life, health, and safety of working mothers —the premise of the pregnant woman, who because of her condition, is affected in the discharge of her duties. In considering this superior value involved in the peculiar situation of the pregnant woman, it varied the rule as to the contents of the concept of just cause. *Cf. Ponce Candy Industries v. District Court*, 69 P.R.R. 387 (1948), in which the constitutionality of Act No. 3 of 1942 was sustained, see Note in 19 *Rev. Jur. U.P.R.* 33 (1949). By the same token it also consecrated a period of rest, with pay, during four weeks before and four weeks after childbirth.[3]

---

[2] The same opinion prevails as to public servants. Section 31 of the Personnel Act, 3 L.P.R.A. § 671, as amended by Act No. 118 of June 8, 1967 (Sess. Laws, p. 362), provides as cause for removal, among others, the following: "(1) Manifest disability, or incompetence in the discharge of duties; (2) Carelessness or negligence in the discharge of duties . . . ."

[3] The statement of motives of the aforesaid act says:

"The legislation in force in Puerto Rico provides no protection whatever for working mothers. In collective and individual labor agreements it is not customary to include any provision to guarantee any period of rest for working mothers in the weeks that precede or follow the birth. Uninterrupted work during this period constitutes a positive danger to the health and life of the workers. Medical science counsels the observance of a period of rest in these cases. Modern labor legislation is oriented towards providing working mothers with this indispensable rest. The Puerto Rico Women who work in offices, commercial and industrial establishments, and public-service enterprises need the benefits of this humanitarian measure which is indispensable for the protection of their health

Nevertheless, it seems clear that the compensation rule varies whether it involves a labor contract without a definite term[4] or a contract with a fixed term. In the first case the act provides for compensation equivalent to one month's salary, in the second, the provisions of the Civil Code which govern the determination of the damages caused by the breach of the contract apply. We said in *Cassasús* v. *Escambrón Beach Hotel*, 86 P.R.R. 356, 360 (1962), that:

"When the service labor contract is for a definite term, the nonperformance on the part of the employer gives the right to a cause of action for the recovery of damages caused by the breach of contract. *Long Corporation* v. *District Court*, 72 P.R.R. 737 (1951), see § 1476 of the Civil Code, 1930 ed., 31 L.P.R.A. § 4114, which refers to field hands, mechanics and other workers hired for a certain time. In contracts without definite term labor legislation has been interpolated to prevent that when an employee is removed—who cannot exercise the right of an action for breach of contract because it did not contain a definite term for rendering services—he may be left entirely unprotected economically until he procures and obtains a new job."

With this exposition of the applicable law we shall examine the facts of the present case. The trial court decided

and the preservation of their lives. It is hereby declared that the public policy of this Act is, through the exercise of the powers of the Legislature of Puerto Rico to enact laws for the protection of the lives, health, and security of employees and workmen, to establish the right of working mothers to a rest which shall include four weeks before and four weeks after the birth."

Additional protection to pregnant women is granted by § 1 of Act No. 73 of June 21, 1919, as amended, 29 L.P.R.A. § 457.

[4] See, *Cassasús* v. *Escambrón Beach Hotel*, 86 P.R.R. 356 (1962) and *Wolf* v. *Neckwear Corporation*, 80 P.R.R. 519 (1958).

Act No. 103 of June 6, 1967 (Sess. Laws, p. 336), which went into effect 90 days after its approval, requires that the working test period contracts should be written stating the dates in which the working test period begins and ends. It also provides that said period cannot exceed three months unless it is extended by the Secretary of Labor, but under no circumstances can the period exceed six months.

that the plaintiff Doris Farinacci Schneider began to work in August 1962 as a secretary in the business of defendant, Tropical Gas Company, Inc., for a working test period of two months, with a monthly salary of $325; that before this period had elapsed the employer knew that Mrs. Schneider was pregnant; that at the end of the working test period she was made a permanent employee with a monthly salary of $350; that "after the working test period and as her pregnancy advanced, her work began to slow down and her output was less each day" which caused that the attention be called for deficiencies, oversights, and errors committed; that on December 31, 1962, the plaintiff was dismissed from her work, and she was paid, in addition to the days worked, one month's salary, as well as the amount for accumulated vacations; and that the childbirth took place about the middle of June 1963, that is five months and a half after her dismissal.

On the grounds of these findings judgment was rendered ordering the defendant-appellant to pay four months and a half salary to the plaintiff, which she should have received since her dismissal till four weeks before childbirth, and from then till four weeks after childbirth, at the rate of one-half salary. Sections 2[5] and 4 of Act No. 3 of 1942 were invoked therefor. We decided to review the judgment.

---

[5] Section 2, 29 L.P.R.A. § 467, reads as follows:

"During pregnancy, working women shall be entitled to a rest which shall include four weeks before and four weeks after the birth.

"During this period the work of women workers in an advanced stage of pregnancy shall be prohibited in offices, commercial and industrial establishments, and public utilities.

"The employer shall likewise be under obligation to pay to the working mother during the said period of rest one-half of the salary, wages, day wages, or compensation that she may be receiving for her work. This payment shall be made in the same manner and on the terms established for the payment of the regular salaries, wages, day wages, or compensation; *Provided*, That the average of the salary, wages, day wages, or compensation that she may have received during the three (3) months immediately preceding the beginning of the period of rest shall be taken

▉ Apparently, the error committed by the trial judge was due to the fact that he extended the protection which the lawmaker intended to give for the *rest* of pregnant working women, to the case of her dismissal. The aforesaid act consecrates two different rights, which operate in different situations and with different results. The right of rest refers only to the four weeks before and after childbirth, and has nothing to do with unjustified dismissal. As to the latter we have seen that the compensation depends on the definite or indefinite term of the work contract. There is nothing in the record to demonstrate that Mrs. Schneider had been employed for a fixed term, in which case it would have been appropriate to grant her compensation till the termination of the contract but rather for an indefinite term, which would give her the right to one month's salary. Observe also that the act itself in its § 7, 29 L.P.R.A. § 472, upon dealing with the judicial claim to which the working woman has a right, refers only to "salary, wages, or compensation corresponding *to said period of rest,*" that is to the eight weeks rest. If we would actually uphold the judgment we would be deciding that the relation of the work was for a fixed term, that is till one month after childbirth. An examination of the statement of motives which is transcribed in footnote 3, reveals that the Legislature intended to compensate only the eight-week period, and that it did not intend to intervene in the particular

---

as the sole basis for computing one-half of the salary, wages, day wages, or compensation.

"If the birth takes place after the four weeks following the date on which the working woman has begun to enjoy her rest, or if it is followed by any disease caused directly by the birth, and which prevents her from working for a period of more than four weeks, counting from the date of the birth, the employer shall be obliged to extend the period of rest for a period which shall not exceed four additional weeks, if, before the period of rest expires, a medical certificate accrediting such facts is presented to him. In this case the working woman shall have no additional compensation but her employment shall be kept open for her."

relations of work between the parties to create an artificial contractual relation.[6]

In view of the former conclusions, appellant's assignment on the nonexistence of a civil penalty is irrelevant.

The judgment rendered by the Superior Court, San Juan Part, on February 23, 1966, will be reversed and the complaint dismissed.

Mr. Justice Belaval, with whom Mr. Chief Justice Negrón Fernández, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra concur, dissented in a separate opinion.

—O—

Mr. Justice Belaval, with whom Mr. Chief Justice Negrón Fernández, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra concur, dissenting.

San Juan, Puerto Rico, December 29, 1967

The trial court found the following facts proven: Plaintiff-appellee, Doris Farinacci Schneider, began to work for the defendant-appellant during a two-month working test period with a monthly salary of three hundred and twenty-five dollars, and a promise of a raise up to three hundred and fifty dollars if she were made a permanent employee; before the end of the working test period, the employer knew that Mrs. Schneider was pregnant, but in spite of such knowledge, he made her a permanent employee with a salary of three hundred and fifty dollars; as plaintiff's pregnancy advanced, her work began to slow down and her output was less each day, for which reason the plaintiff's superiors

---

[6] If we would adopt the interpretation of the trial court, and consider the application of §. 3 of the Act, 29 L.P.R.A. § 468—"During the period referred to in the preceding section, the employer shall be bound, notwithstanding any stipulation to the contrary, to keep the position open for the pregnant worker."—we would have to conclude with the same logic that the employer shall be bound to pay the employee for an indefinite term.

called her attention on various occasions for carelessness and errors in her work. On December 31, 1962, the defendant dismissed the plaintiff giving her the salary for one extra month, and paying her also her vacations accumulated till that date. The plaintiff gave birth about the middle of June 1963.

Sections 2 and 4 of Act No. 3, of March 13, 1942, § 2 as amended by Act No. 398 of May 13, 1947, were applied to these facts. These sections, insofar as pertinent, provide:

"Section 2.—During pregnancy, working women shall be entitled to a rest which shall include four weeks before and four weeks after the birth.

"During this period the work of women workers in an advance stage of pregnancy shall be prohibited in offices, commercial and industrial establishments, and public utilities.

"The employer shall likewise be under obligation to pay to the working mother during the said period of rest one-half of the salary, wages, day wages, or compensation that she may be receiving for her work. . . .

". . . . . . . . . .

"Section 4.—The employer cannot, without just cause, discharge a pregnant woman. A decrease in the amount of work done because of the pregnancy shall not be considered as just cause."

The trial court decided that defendant-appellant was bound to pay to plaintiff-appellee in accordance with § 4 of the aforesaid Act, the complete salary which she should have received up to four weeks before childbirth, in addition to eight weeks of rest receiving half of the salary, in accordance with § 2 of the same Act, all of which amounts to a sum of $1,925.00.

The defendant-appellant, in its appeal for review asks us to reverse the judgment of the trial court of San Juan because (1) Act No. 3 of March 13, 1942, does not establish penalties or punishments of a civil nature, against an employer who dismisses a pregnant employee with or without just cause; (2) in order to have the right of rest which § 2

of Act No. 3 of March 13, 1942, establishes, as amended by Act No. 398 of May 13, 1947, the pregnant working woman must be working at the time of the beginning of the four weeks before childbirth, that is, at the moment of childbirth the relation of employer and employee must exist between the parties, and in this case the plaintiff was dismissed five months and a half before childbirth, for which reason she was not entitled to get protection from the act which protects pregnant working women; (3) parting from the premise that the plaintiff-appellee was entitled to protection under the aforesaid act, there would be no grounds valid at law to order the defendant to pay the salaries corresponding to the months comprised between the date of dismissal and the four weeks before childbirth.

4. On her part, the employee-appellee alleges, on the contrary, that the defendant-appellant in admitting that it dismissed the employee-appellee without just cause, during her state of pregnancy, violated the mandatory provisions of § 4 of Act No. 3 of March 13, 1942, which protect pregnant working women, for which reason they have a right to sue the employer for damages, in accordance with § 1802 of the Civil Code of Puerto Rico, the logical measure of damages, being in that case, the sum of money the pregnant working woman would have received if she would have continued working during her pregnancy.

1-4. Although Act No. 3 of March 13, 1942, does not establish penalties of a civil nature against an employer for dismissing a pregnant employee, with or without just cause, § 4, insofar as it provides that the employer cannot, without just cause, dismiss a pregnant woman, not considering as just cause less output because of pregnancy, establishes an implied agreement of a public nature—*ex re pública facere*— in every work contract of a pregnant woman which must be complied with by the obligee, and whose nonperformance gives the aggrieved party the right to the corresponding re-

covery of damages, the reasonable measure for damages being in that case the sum of money the pregnant employee would have received if she had continued her work during pregnancy.

The penalty established by § 6 of the aforementioned Act No. 3 of March 13, 1942, is a punitive relation between the State and the offender, while the recovery of damages is a commutative relation between the tort-feasor and the prejudiced party because of nonperformance of the contract, intervened by the State, but always of a private nature. A punitive penalty cannot be substituted by a recovery of damages, considering isolatedly and as floating in a private vacuum, the provisions of a special act which in some manner reverse, modify or alter a general statute of damages. Our civil system is one of codified Law which binds us to apply all the corresponding legislation to an institution of law in a harmonious and orderly manner, and it is only in those cases in which the special provisions are in a direct and irreconcilable conflict with the general provisions that the former should prevail against the latter. After examining the provisions of Act No. 3 of 1942 with the civil institution of damages for nonperformance of a work obligation, there does not exist between them a conflict which could weaken the legal effects of the latter in favor of the former.

Two protections exist for the pregnant working woman in Act No. 3 of March 13, 1942. The first is to procure that the pregnant woman can continue in her work during pregnancy; the second is to procure a rest period for the pregnant woman during the critical time of childbirth. If the pregnant employee is dismissed from work, without just cause, the employer is bound to pay her complete salary during her pregnancy, and one-half of the salary during her rest period.

The judgment rendered on February 23, 1966, by the San Juan Part of the Superior Court of Puerto Rico, in case No. 63-489 of said court, should be affirmed.